## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF FLORIDA

In re:

Gary Francis Hoste                                           Case No.: 15-28607-JKO

                                                             Chapter 7

_____Debtor_____/

## MOTION FOR ORDER APPROVING SETTLEMENT AGREEMENT

Trustee Sonya L. Salkin, by and through her undersigned counsel, moves this Court to approve the attached Settlement Agreement (the "Agreement"), and in support thereof states as follows:

### Introduction

1.     The Trustee has diligently examined the facts and circumstances surrounding the filing of this Chapter 7 case, which was initiated as Chapter 7 case on October 20, 2015 (the "Petition Date"). As a result of such efforts, the Trustee has identified significant areas of dispute with the Debtor and his non-filing spouse, Cindi Chan ("Chan"), and certain business entities controlled by her, as detailed further hereinbelow. The Trustee also believes, absent a settlement of the type proposed in the Agreement attached hereto, she likely would also have possible disputes with creditor Dr. Jeffrey Miller ("Miller"), also as detailed hereinbelow. In consideration of these actual and possible disputes, the Trustee, the Debtor, Chan and Miller agreed to seek mediation of various pending adversary proceedings and contested matters and also (effectively) as to possible yet unfiled actions [ECF #141], which mediation this Court subsequently ordered [ECF #143]. The mediation ordered, in fact, resulted in a judicial settlement conference before the Honorable Paul G. Hyman [ECF ## 145,147], which was conducted February 2, 2017, lasting the entire business day (the "Settlement Conference"). The Settlement Conference was a success [ECF #152],

whereat a term sheet was executed by all the participants and their respective counsel in attendance. All the material provisions of that term sheet form the basis of, and are embodied in, the Agreement now submitted by the Trustee for this Court's approval.

2.      As a result of the efforts described above, the Trustee, the Debtor, Chan (and the business entities controlled by her), and Miller have reached the attached Agreement, which, in brief, provides, for a total net payment of $**275,000.00** (the "Settlement Amount") to the Bankruptcy Estate, with Miller and his counsel ultimately seeing the benefit of $125,000.00 of that amount. More details of the Agreement are discussed hereinbelow, but the Agreement itself is some fifteen (15) pages in length, due to the complex, overlapping issues between the Parties. **Accordingly, any discussion in this Motion of the terms of the Agreement can only be a brief summary of its detailed provisions, and all parties in interest are strongly advised to read the entire attached Agreement carefully. The actual terms of the Agreement shall govern to the extent there may be any conflict perceived between them and the summary discussion of them in this Motion.**

### The Matters to be Resolved

3.      On July 14, 2016 the Trustee filed her objection to certain claimed exemptions of the Debtor (ECF #126). The next day Miller filed his joinder to these objections (ECF #131). Miller has also filed proof of claim #6, which is referenced by his joinder. In turn the Debtor filed a response to both the Trustee's objections and Miller's joinder (ECF #134) (collectively ECF ##126, 131 and 134 are hereinafter referred to as the "Contested Matters").

4.      On July 14, 2016 the Trustee filed adversary proceeding 16-01324 against the Debtor, alleging causes of action under 11 U.S.C. §727 (ECF #130). The next day Miller filed adversary proceeding 16-01329 against the Debtor, alleging causes of action against the Debtor

under 11 U.S.C. §§523 and 727 (ECF #132). Thereafter, on July 21, 2016, the Trustee filed adversary proceeding 16-01337 against the Chan and certain business entities controlled by her alleging causes of action pursuant to 11 U.S.C. §548 and Fla. Stat. §726 (ECF #133) (collectively the adversary proceedings initiated by ECF ## 130, 132 and 133 are referred to as the "Adversary Proceedings"). In each of the Adversary Proceedings the respective defendants thereto have filed answers and affirmative defenses.

5.     While a full review of the Contested Matters and Adversary Proceedings would be needed to detail the exact nature of all the filed disputes between (i) the Trustee and Miller and (ii) the Debtor and Chan (and certain business entities controlled by her), the Trustee believes a fair, very brief summary of the major issues would be the following:

      a.     The Trustee and Miller dispute the alleged ownership claims regarding substantial quantities of gold and silver (the "Precious Metals"), which were claimed to be owned either by the Debtor/Chan tenancy by the entirety or by Chan (these Precious Metals are currently in the bare possession of the Trustee by both voluntary turnover and prior order of the Court);

      b.     The perceived avoidable disposition of the Debtor's former business to Chan; and

      c.     As to both of these issues, the conduct of the Debtor and Chan in the period immediately prior to the Petition Date.

In addition, Miller believes that he may have independent claims against Chan and her business entities (claims not yet filed), a contention which Chan strongly disputes. However, to the extent such claims would exist, they would also serve to create a possible dispute between the Trustee and Miller. Further, since a substantial portion of the Precious Metals were purchased through a non-debtor entity formerly controlled by the Debtor, and Miller holds a judgment against such non-debtor entity, there would be further grounds of possible dispute between the Trustee and Miller. Finally, as to a pre-petition bank garnishment undertaken by Miller (in the amount of

$36,625.80), there would be a three-way dispute between the Trustee, Miller and the Debtor and Chan.

6.      The Agreement is intended to resolve all of these issues, and any other related issues between (i) the Trustee and the Bankruptcy Estate, (ii) Miller and (iii) the Debtor and Chan, except as specifically carved out in the Agreement. **Again, the specific terms of the Agreement shall control over the very brief summary provided by the Trustee (and only the Trustee) here.**

**The Applicable Legal Standards for Approval**

7.      Fed. R. Bankr. P. 9019(a) authorizes the Court, after notice and a hearing, to approve a compromise or settlement of a controversy. The approval or rejection of a compromise or settlement is left to the sound discretion of the Bankruptcy Court, which should approve the settlement when it is fair and equitable and in the best interests of the estate. *In re Kay*, 223 B.R. 816, 819 (Bankr. M.D. Fla. 1998). There is a general policy that encourages settlements and favors compromises. *In re Bicoastal Corp.*, 164 B.R. 1009, 1016 (Bankr. M.D. Fla. 1993) (recognizing that the law favors compromise of disputes); see also *Myers v. Martin (In re Martin)*, 91 F.3d 389, 394 (3d Cir. 1996); *Florida Trailer and Equip. Co. v. Deal*, 284 F.2d 567, 571 (5th Cir. 1960). Some courts have held that a proposed settlement should be approved unless it yields less than the lowest amount that the litigation could reasonably produce. *In re Holywell Corp.*, 93 B.R. 291, 294 (Bankr. S.D. Fla. 1988).

8.      Courts have relied on a number of factors in determining whether to approve a compromise or settlement pursuant to Bankruptcy Rule 9019(a). These factors include the following: (a) the probability of success in the litigation; (b) difficulties, if any, to be encountered in matter of collection; (c) the complexity of the litigation involved and the expense,

inconvenience, and delay necessarily attending the litigation (including the possibility that denial of the settlement will cause the depletion of assets); and (d) the paramount interests of the creditors and a proper deference to their reasonable views. *In re Justice Oaks II, Ltd*., 898 F.2d. 1544, 1549 (11th Cir. 1990), *cert. denied sub nom*., *Wallace v. Justice Oaks II, Ltd*., 498 U.S. 959 (1990); *Kay*, 223 B.R. at 820; *see also* 9 Collier on Bankruptcy ¶ 019.03[1] (15th ed. 1993) (noting that the settlement process "requires a bankruptcy judge to assess and balance the value of the claim that is being compromised against the value to the estate of the acceptance of the compromise proposal"). After duly reviewing these factors, a bankruptcy court can only be said to err in its approval of a settlement or compromise if it "fall[s] below the lowest point in the range of reasonableness." *In re Martin*, 490 F.3d 1272, 1275 (11th Cir. 2007). Moreover, the decision of a bankruptcy trustee as to whether to settle any matter is to be considered a matter within the sound business judgment of the trustee. *In re Morgan*, 439 Fed. Appx. 795 (11th Cir. 2011).

## Application of those Legal Standards to this Agreement

9.     In applying the above standards to this case, the Trustee believes the factors set out in *Justice Oaks* strongly favor approval of the Agreement and the settlement embodied therein. As to probability of success, there are a variety issues before the Court, so the prospects of success vary by issue and are necessarily impacted, in some instances, by possible cross-litigation with Miller. For example, while the Trustee evaluated her case on the claimed exemption in the Precious Metals highly, that cannot end the inquiry. Since much of the Precious Metals were purchased through a business entity against which Miller holds a pre-petition judgment, simply succeeding against the Debtor and Chan would not, in itself, guarantee "success" (i.e. recovery to the Bankruptcy Estate)—additional litigation, perhaps outside the bankruptcy court, would be required to sort out the respective rights of the Trustee and Miller. As to collectability, certainly the

Debtor and Chan were collectable up to the value of the Precious Metals currently being held by the Trustee subject to further Court order—but that likely value is probably about $75,000.00 less than the Settlement Amount. As to complexity, expense and delay, as already discussed, given the three-way tussle that would likely result absent a settlement like that proposed in the Agreement, all would be extremely detrimental to the Bankruptcy Estate and its creditors. Finally, as to the interests of the creditors, multiple reasons indicate that this factor is more than met. First, creditor Miller, the only active creditor in this case, is a party to the Agreement—and he holds over 50% of the filed claims in this case, and was beyond dispute the precipitating cause of this bankruptcy filing. But beyond this, the settlement proposed, with its cap on professional fees (Agreement at ¶7) and waiver of any other Miller claims beyond the payments set forth in the Agreement (Agreement at ¶6d), will assure a distribution to the other creditors entitled to such a distribution pursuant to 11 U.S.C. §726. Accordingly, the Trustee believes that the *Justice Oaks* factors are plainly met in this case.

10.     The Trustee is not unmindful that among the issues being resolved by the Agreement is her §727 action against the Debtor, and will specifically address the concerns that resolving such an action may raise. Federal Rule of Bankruptcy Procedure 7041 plainly implies that such actions can be resolved or at least dismissed short of trial, upon proper notice. Although there are earlier cases under the Code which call into question the issue the settlement of 727 actions *per se*, the current majority approach seems to be that such compromises should be permissible but subjected to heightened scrutiny. *In re Roqumore,* 393 B.R. 474 (Bankr. S.D. Tex. 2008).

11.     In this case, the Trustee thoroughly evaluated the prospects of settlements not involving a discharge--none of them were viable, including possible settlements with and without

Miller (and presumably, given the high-quality of his legal representation, Miller undertook a similar analysis as to his own §727 action). While the mediation privilege prevents detailed discussion, it should be self-evident that Judge Hyman, in his capacity, was also aware of the issue. The essential problems, which were seemingly apparent to all well before the Judicial Settlement Conference, were this: the Debtor and Chan could not afford to settle at a figure acceptable to the Trustee and/or Miller without a discharge. The Trustee alone could not obtain an acceptable offer from the Debtor and Chan as to the exemption and fraudulent transfer issues, if the Debtor and Chan faced unlimited future expense fighting with Miller—and Miller presumably faced the same problem if he sought a bilateral settlement just with the Debtor and Chan. The only mechanism that the parties could devise, with the assistance of Judge Hyman, necessarily required a structure like that proposed by the Agreement, involving resolution of *all* issues, including the §727 action.

12.     Under these unique facts, the Trustee believes an agreed resolution of the §727 action does not adversely impact the systemic concerns which the Court may have, and is a positive benefit to all creditors. Accordingly, the Trustee believes that a resolution of the §727 action is fully warranted under the circumstances of this necessarily complex case.

WHEREFORE, for the reasons stated hereinabove, the Trustee asks this Court to approve the Agreement attached hereto and the terms of settlement contained therein, and for any other relief that may be appropriate and just.

The Salkin Law Firm
P.O. Box 15580
Plantation, FL 33318
(954) 423-4469
(954) 423-4479 fax

By: Mark Bonacquisti
Mark Bonacquisti
FLBN: 703527

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA

In re:

GARY FRANCIS HOSTE                           CASE NO.: 15-28607-JKO
                                             CHAPTER 7
_____ Debtor      /

## SETTLEMENT AGREEMENT

This Settlement Agreement ("Agreement" or "Settlement") is executed by and between Chapter 7 Trustee Sonya L. Salkin ("Trustee"); Gary Francis Hoste, individually and/or d/b/a Gary Hoste, D.C. (collectively, the "Debtor"); Cindi Chan ("Chan"); Chan Courier Services, Inc ("Chan Courier"), Yin Yang Management Inc. ("Yin Yang"); Your Doctor Center LLC ("Your Doctor"); and Jeffrey Miller ("Miller") (collectively referred to as the "Parties"), effective February __, 2017 (the "Execution Date").

### *RECITALS*

The Parties acknowledge and agree as follows:

A.  On October 20, 2015 (the "Petition Date"), Debtor filed a voluntary petition for relief under Chapter 7 of Title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of Florida, Fort Lauderdale Division (the "Bankruptcy Court"), commencing a bankruptcy case assigned number 15-28607 (the "Bankruptcy Case").

B.  Miller timely filed proof of claim #6, asserting a claim in the amount of $490,084.91, of which total the sum of $36,625.80 was claimed to be secured by a garnishment lien (the "Garnishment Funds") allegedly perfected more than ninety days prior to the Petition Date (the "Miller Proof of Claim").

1

C. The Miller Proof of Claim is based upon, and attaches as documentary support for same, a Final Judgment Upon Consent (the "Miller Consent Judgment"), which was entered on April 9, 2013, in that certain lawsuit filed in the U.S. District Court for the Southern District of Florida, captioned *Miller v. Hoste, et al.* [Case Number 11-61946-CIV-Rosenbaum] (the "Miller District Court Action").

D. As a result of the Miller Consent Judgment entered in the Miller District Court Action, Miller and the Trustee have asserted that they have, or may have, certain fraudulent transfer and associated post-judgment claims against the Debtor and Chan, as well as non-debtor parties currently and/or previously owned and/or controlled by the Debtor and/or Chan, including, without limitation, Chan Courier, Yin Yang, and/or Your Doctor (collectively, the "Non-Debtor Entities"). Chan, the Debtor, and all the Non-Debtor Entities vigorously dispute all such claims.

E. Absent the approval of the settlement contemplated herein, the Trustee and Miller could have competing claims against the Non-Debtor Entities and/or Chan, which could and likely would produce costly cross-litigation between the Trustee and Miller, possibly outside the jurisdiction of the Bankruptcy Court.

F. No Party contests the face amount of the Miller Proof of Claim. Absent the approval of the settlement proposed herein, the Debtor and the Trustee believe they may have grounds to object to the alleged secured component. Miller vigorously disputes such objections.

G. On July 14, 2016, the Trustee initiated adversary proceeding 16-01324 against the Debtor, alleging various grounds of objection to the Debtor's discharge under 11 U.S.C §727 (the "Trustee Discharge Action"). The Debtor has filed an answer and affirmative defenses to the Trustee Discharge Action.

H. On July 15, 2016, Miller initiated adversary proceeding 16-01329 against the Debtor, alleging various grounds of objection to the Debtor's discharge under 11 U.S.C §727, and

dischargability of the debt represented by the Miller Proof of Claim under 11 U.S.C §523 (the "Miller Discharge Action"). The Debtor has filed an answer and affirmative defenses to the Miller Discharge Action.

I.  On July 21, 2016, the Trustee initiated adversary proceeding 16-01337 against Chan, Yin Yang and Your Doctor, alleging various grounds to avoid certain transfers from the Debtor (the "Trustee Avoidance Action"). Chan has filed an answer and affirmative defenses to the Trustee Avoidance Action.

J.  On July 14, 2016, the Trustee filed an Objection to Debtor's Claimed Exemptions (the "Trustee Objection") [ECF # 126] which, among other things, objected to claims of tenancy by the entirety in certain holdings of gold and silver, discussed below. Miller filed a joinder therein (the "Miller Joinder," and together with the Trustee Objection, the "Objection to Exemptions") [ECF #131], and the Debtor filed a consolidated response to both the Trustee's objection and Miller's joinder [ECF #134], opposing each.

K.  As result of voluntary and court-ordered turnover by the Debtor and/or Chan, the Trustee is currently in possession of certain gold and silver that were provided to the Trustee by the Debtor and/or Chan to hold pending a resolution of the Objections to Exemptions, as evidenced by a Notice of Filing Notice of Turnover of Property, filed by the Trustee on February 24, 2016 [ECF #64], an Order Granting Motion For Turnover of Property, entered by the Court on April 12, 2016 [ECF #91], and another Notice of Turnover of Property, filed by the Trustee on July 14, 2016 [ECF #125]. The gold and silver encompassed by ECF ## 64, 91 and 125 are hereafter collectively referred to as the "Precious Metals."

L.  The Trustee and Miller assert that all the Precious Metals in the Trustee's possession were uncovered upon a core of information initially gleaned from facts disclosed by counsel for Miller to the Trustee.

M. The Parties have determined, without admitting any fault or liability on the part of any of the Parties, respectively, and to avoid the significant cost, delay and risk of litigation and appeals, that it is in their mutual best interests to resolve any and all claims and disputes that have arisen or could arise between and among them by entering into this Agreement.

## *AGREEMENT*

For and in consideration of the promises, representations, and warranties set forth herein, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties agree as follows:

1. <u>Intent of Settlement</u>.  It is the intention of the Parties that this Settlement shall resolve all issues between them arising under, arising in or related to the Bankruptcy Case, as well as any matter beyond that scope specified hereinbelow provided however, as to the Debtor, this intention by the Trustee and Miller shall be limited to all matters duly disclosed by the Debtor through his schedules and statement of financial affairs, as amended through the execution of this Agreement. The issues to be settled include, but are not limited to, the following:

   a.  The Trustee Discharge Action;

   b.  The Miller Discharge Action;

   c.  The Trustee Avoidance Action;

   d.  The Objection to Exemptions;

   e.  The Miller Proof of Claim, including its allegedly secured component;

   f.  The Miller Consent Judgment, including any post-judgment collection issues and efforts in connection therewith;

   g.  All claims and actions, and/or all potential claims and actions, by the Trustee and/or Miller against the Debtor, Chan, and any of their respective insiders or affiliates, as those terms are defined in 11 U.S.C. §101, including, without limitation, all of the Non-Debtor Entities;

   h.  All claims or potential actions between the Trustee and Miller: and

4

      i. All professional fees, exclusive of any pending motions for sanctions against counsel in Case Number CACE-15-001694 in the Seventeenth Judicial Circuit in and for Broward County, Florida and Case Number 4D15-3152 in the Fourth District Court of Appeal of Florida..

2. <u>Bankruptcy Court Approval Required.</u> This Agreement is expressly subject to final approval by the Bankruptcy Court. Following the execution of this Agreement, the Trustee shall promptly file a motion pursuant to Federal Rule of Bankruptcy Procedure 9019(a) (a "Settlement Motion") seeking Bankruptcy Court approval of this Agreement. The order of the Bankruptcy Court approving the Settlement Motion is hereinafter referred to as the "Approval Order." The Parties agree that by entering into this Agreement, no Party is admitting liability to any other Party, or to any third party, and the terms of this Agreement shall be inadmissible in any court or other forum for the purposes of establishing the same. The Parties are entering into this Agreement to avoid the delay, expense and uncertainty of litigation. In the event the Bankruptcy Court does not approve this Agreement in its entirety (or upon such modified terms agreed to in an express writing signed by all the Parties), then the entire Agreement shall be null and void and without any effect.

3. <u>Submission to Bankruptcy Court Jurisdiction</u>. Each of the Parties to this Agreement agrees that any dispute regarding this Agreement, after entry of final order approving same, is subject to the laws of Florida, and that venue for any dispute regarding this Agreement shall be proper and exclusive in the United States Bankruptcy Court for the Southern District of Florida, Fort Lauderdale Division, which shall have full jurisdiction over the same. The Parties hereby expressly waive any waivable challenges to Bankruptcy Court jurisdiction that might arise under any doctrines set forth in *Stern v. Marshall,* 564 U.S. 2 (2011) or its judicial progeny.

4. <u>Payment of Settlement Amount by Debtor and Chan</u>. Debtor and Chan jointly and severally agree to pay the Trustee, on behalf of the bankruptcy estate of the Debtor, the total net sum

of $275,000.00 (the "Settlement Amount"). The Settlement Amount shall be paid as follows:

a. The Debtor and Chan shall waive any claim to the $36,625.80 in Garnishment Funds, and this sum shall be credited to the Settlement Amount. As the Trustee previously took possession of the Garnishment Funds, the total amount of Garnished Funds ($36,625.80) shall be deemed as already paid.

b. The remaining balance of the Settlement Amount, totaling $238,374.20 (the "Settlement Balance") shall, to the extent necessary, be funded by the liquidation of the Precious Metals (the "Saleable Precious Metals"); provided, however, the Debtor or Chan may designate certain specific items of the Precious Metals as not to be sold (the "Non-Saleable Precious Metals"). The Trustee shall sell the Saleable Precious Metals at fair market value for gold and silver, up unto the point that the Trustee receives the full Settlement Balance. Notwithstanding, if feasible, to the extent the Debtor and/or Chan may have certain rights or abilities to re-sell the Saleable Precious Metals at prices above fair market value, then the Trustee shall utilize such rights; further provided, however, that under no circumstance shall the Trustee be required to enter into any transaction where the proceeds of sale or repurchase are not paid directly to her in cleared funds. Subject to the foregoing provisos, the Trustee, the Debtor, and Chan shall reasonably cooperate to maximize the liquidation value of the Saleable Precious Metals. The Debtor and Chan shall have five (5) business days from the full execution of this Agreement to designate all Non-Saleable Precious Metals. The Trustee shall have thirty (30) days from full execution of this Agreement in which to determine the methodology, potential transportation, and means of sale/liquidation of the Saleable Precious Metals.

c. If the Trustee recovers the Settlement Balance from liquidation of the Saleable Precious Metals, then such sum shall be credited to the Debtor and Chan and the full Settlement Amount shall be deemed as fully paid. However, in the event the

liquidation of the Saleable Precious Metals returns a sum less than the Settlement Balance, then that shortfall (the "Settlement Shortfall") shall be paid by the Debtor and Chan within forty-five (45) days of the full execution of this Agreement. The Settlement Shortfall, if required, shall be paid in cleared funds made payable to**: Sonya L. Salkin, Chapter 7 Trustee, 900 South Pine Island Road, Suite A-150, Plantation, Florida 33324**.

    d. If the liquidation of the Saleable Precious Metals produces a sum in in excess of the Settlement Balance, then any amount in excess thereof (the "Settlement Excess") shall be paid over by the Trustee to the Debtor and Chan within five (5) business days of liquidating the Saleable Precious Metals, without the need of any additional court order beyond the order approving this Agreement. The Settlement Excess shall be paid in cleared funds to: **Greenstein & Lubliner IOLTA Account, 1655 Palm Beach Lakes Blvd., Suite 800, West Palm Beach, FL 33401**.

    e. The Settlement Amount of $**275,000.00** is a **net sum**. Accordingly, the Debtor and Chan shall bear all costs of all reasonable storage, transportation, liquidation and related costs that may come due from third-party vendors after execution of this Agreement (collectively, "Storage Costs").  Such Storage Costs do not include any amounts that may have already been paid by the Trustee, credited to the Trustee, and/or that have otherwise accrued or become due and payable before the date of execution of this Agreement. The Trustee shall promptly provide the Debtor and Chan with written notice and documentation confirming such Storage Costs.  If the Debtor and Chan do not dispute such Storage Costs, in writing, then the Debtor and Chan shall reimburse the Trustee for any such Storage Costs within fourteen (14) days of receiving from such written notice and documentation from the Trustee.

5. <u>Default</u>. An event of default shall occur if the Debtor and Chan fail to timely make the payment of the full Settlement Amount to the Trustee pursuant to Paragraph 4 above (a "Payment Default"), or to pay the Storage Costs pursuant to Subparagraph 4(e) above (a

"Cost Default"), in either case, the Trustee, through counsel, shall provide written notice of any such default (the "Default Notice") to counsel of record for the Debtor and Chan, via e-mail. The Default Notice shall provide five (5) business days from the date of such notice to cure the default. Should the Debtor and Chan fail to cure the default within the period referenced above, then:

    a. Upon notice of Payment Default or Cost Default filed by the Trustee, and without need of any adversary proceeding, the Bankruptcy Court will deny the discharge of the Debtor by the terms of this Agreement (11 U.S.C. §727(a)(10)) and for failing to obey the order approving this Agreement, which shall direct payment of the Settlement Amount and Storage Costs (11 U.S.C. §727(a)(6)(A)); and

    b. The Trustee and Miller shall be restored to their full array of rights, remedies and actions as if this Agreement had never been executed or approved, except any sums already paid by the Debtor and Chan shall be credited to them to the extent the Trustee and Miller respectively possess such funds.

6. <u>Distribution of Settlement Amount / Settlement of Potential Claims Between the Trustee and Miller</u>. In consideration of the resolution of all possible disputed claims between the Trustee and Miller, the Parties agree that Miller, and professionals employed by him, shall be entitled to payment of the following sums from the **$275,000.00** Settlement Amount paid by the Debtor and Chan to the bankruptcy estate.

    a. Miller's attorneys listed hereinbelow shall promptly file applications for payment of administrative expenses, which will be deemed allowed by the Bankruptcy Court:

        i. Zach Shelomith, Esq., $13,500.00;
        ii. Mark Rickard, Esq., $19,500.00; and
        iii. Howard Levine, Esq., $22,000.00.

The Trustee shall be authorized to pay such administrative claims upon payment in full of the Settlement Amount by the Debtor and Chan, without need of any further order of the Bankruptcy Court beyond the Approval Order.

b. Miller shall be deemed to hold an allowed secured claim in the sum of $**36,625.80** in consideration of the Garnishment Funds, for which stay relief shall be deemed to be granted upon payment in full of the Settlement Amount by the Debtor and Chan. No further order of the Bankruptcy Court beyond the Approval Order shall be required to effectuate such stay relief, and the Trustee shall be authorized to pay such funds over to Miller without need of further order of the Bankruptcy Court beyond the Approval Order.

c. The bankruptcy estate shall pay Miller the sum of $**33,374.20** (the "Miller Settlement Payment") in consideration of the releases by Miller given by Miller described in Section 7 below, which releases constitute an essential element required to achieve this Settlement. The Miller Settlement Payment shall constitute a Bankruptcy Court authorized distribution from the bankruptcy estate.

d. Miller shall have no other claim in this Bankruptcy Case.

7. Distribution of the Balance of the Bankruptcy Estate / Estate Professional Fees. Upon payment in full of the Settlement Amount by the Debtor and Chan, the Trustee and her professionals shall be entitled to file applications for compensation in accordance with Chapter 3 of Title 11, United States Code, the Federal Rules of Bankruptcy Procedure, the Local Rules of the Bankruptcy Court and the applicable guidelines of the Office of the United States Trustee. ***Subject to the independent review of the Bankruptcy Court***, the Parties agree that the Trustee shall be entitled to the statutory fee allowed by 11 U.S.C. §326 on a distribution of $275,000.00, which has been calculated at $**17,000.00**; and her counsel, The Salkin Law Firm, P.A., shall be entitled to professional fees and expenses in the sum of $**75,000.00** (the Parties acknowledge that the actual amount of such fees and expenses

9

already exceed such amount, which shall be reflected in the actual fee application filed by The Salkin Law Firm, P.A.). Any other professionals to be employed by the Trustee, e.g. accountants required for the preparation of bankruptcy estate tax returns, shall be duly retained and compensated in accordance with Chapter 3 of Title 11, United States Code, the Federal Rules of Bankruptcy Procedure, the Local Rules of the Bankruptcy Court and the applicable guidelines of the Office of the United States Trustee. Thereafter, the Trustee shall undertake the usual and ordinary steps to close this Bankruptcy Case, and to distribute the balance of the bankruptcy estate in accordance with 11 U.S.C. §726.

8. <u>Releases</u>. Upon payment in full of the Settlement Amount and the Storage Costs, when due, respectively, then the following releases shall be deemed to have occurred; provided, however, no release delineated below shall release any Party from their respective obligations under this Agreement, nor relieve them from any consequence set forth herein for failing to meet any such obligation.

    a. The Debtor, Chan, and the Non-Debtor Entities release (i) the Trustee, the bankruptcy estate in this Bankruptcy Case, and The Salkin Law Firm, P.A. and its employees, and (ii) Miller, and any professionals retained by Miller who sign this Agreement, from any and all claims or causes of action of any kind however denominated, from the beginning of time through the execution of this Agreement.

    b. Miller and the professionals retained by him who sign this Agreement do hereby release the Trustee, the bankruptcy estate in this Bankruptcy Case, and The Salkin Law Firm, P.A. and its employees from any and all claims or causes of action of any kind, however denominated, from the beginning of time through the execution of this Agreement.

    c. Any and all claims or causes of action, however denominated, by the Trustee, the bankruptcy estate, their agents, affiliates, representatives, and attorneys, including The Salkin Law Firm, P.A. and its employees, against the Debtor, Chan, the Non-

Debtor Entities, and their respective affiliates as defined in 11 U.S.C. §101(2), including, without limitation, the Trustee Discharge Action, the Trustee Avoidance Action, and the Objection to Exemptions, shall be deemed fully settled, released, satisfied, and discharged; provided, however, as to the Debtor only, such release shall be limited to all matters duly disclosed by the Debtor through his schedules and statement of financial affairs, as amended through the execution of this Agreement.

d. Any and all claims or causes of action, however denominated, by Miller, his agents, affiliates, representatives, and attorneys, including the professionals retained by him who sign this Agreement against the Debtor, Chan, the Non-Debtor Entities, and their respective affiliates as defined in 11 U.S.C. §101(2), including, without limitation, the Miller Discharge Action, the Miller Proof of Claim, the Miller Consent Judgment, and the Objection to Exemptions, shall be deemed fully settled, released, satisfied, and discharged.

e. All the releases set forth above are limited to the subject matter encompassed by this Agreement, meaning all matters arising in, arising under or related to the Bankruptcy Case or the Miller District Court Action.

9. <u>General Representations and Warranties</u>.  Each of the Parties represents and warrants as follows:

a. The execution of this Agreement and the performance of the requirements under this Agreement will not:

i. Violate any provision or law, regulation or any judgment, writ, injunction, decree or any order of any court or any other government authority;

ii.　　Violate any indenture, contract, or other commitment or restriction by which such Party is bound;

iii.　　Conflict with, result in, or constitute a breach or default of any indenture, contract or other commitment or restriction under which such Party is bound; or

iv.　　Result in the breach of or default under any agreement, contract, undertaking or other instrument or documents.

b.　　Such Party has the full power and authority to make, deliver, enter into and perform all obligations pursuant to the terms and conditions of this Agreement and has taken all necessary action to authorize its signing representative, if any, to execute, deliver and perform on such Party's behalf, the execution, delivery and performance of the terms and conditions of this Agreement and all documents to be executed and delivered in connection with this Agreement or in order to consummate the transaction contemplated by this Agreement;

c.　　Such Party has freely and voluntarily entered into this Agreement and has had the benefit of legal counsel for all negotiations and drafting in connection with this Agreement;

d.　　Such Party shall use its best efforts and good faith to perform all obligations created hereunder; and

e.　　All warranties and representations contained in this Agreement are material to this Agreement are complete, true and accurate, can be reasonably relied upon without further investigation, are made freely, voluntarily, and without duress, and are or have been made for the specific purpose of inducing the other party to enter into this Agreement.

10. <u>Miscellaneous Provisions</u>.

a. <u>Authority</u>. Each Party signing this Agreement, and any other documents executed in connection with this Agreement, whether signed individually or on behalf of any person or entity, warrants and represents that he has full authority to so execute this Agreement on behalf of the Parties on whose behalf he so signs. Each Party signing this Agreement separately acknowledges and represents that this representation and warranty is an essential and material provision of this Agreement and will survive execution of this Agreement.

b. <u>No Admission of Liability</u>. Each of the Parties understands and agrees that this is a compromise of disputed claims made in order to avoid the significant costs and uncertainties of litigation and that the promises made in consideration of this Agreement will not be construed to be an admission of any liability or facts whatsoever by any Party. If this Agreement is not approved by the Court, then the terms of this Agreement shall be inadmissible as evidence in any court.

c. <u>Entire Agreement</u>. This Agreement contains the entire understanding and agreement between and among the Parties and supersedes all prior agreements and understandings of the Parties relating in any manner to the substance of this Agreement. No other representations, covenants, undertakings, or other prior or contemporaneous agreements, oral or written, respecting such matters, which are not specifically incorporated herein, will be deemed in any way to exist or bind any of the Parties hereto. The Parties hereto acknowledge that each Party has not executed this Agreement in reliance on any such promise, representation, or warranty not expressly contained in the Agreement.

d. <u>Amendment</u>. This Agreement may not be amended or modified unless such amendment is made in writing and executed by all of the Parties hereto.

e. <u>Binding on Successors, Assigns and Others</u>. This Agreement and the covenants and conditions contained herein will apply to, be binding upon, and inure to the Parties

and their heirs, executors, administrators, conservators, trustees, agents, legal representatives, successors, transferees, and assigns including, but not limited to, any subsequent committee, bankruptcy trustee, plan administrator, or liquidating trustee.  The order approving this Agreement shall also be binding on all creditors of the Debtor and the bankruptcy estate and all parties in interest in the Bankruptcy Case of the Debtor.

f.  Advice of Counsel. By signing below, the Parties acknowledge that they have been (or have had the opportunity to be) represented by counsel of their own choice in the negotiations leading up to the execution of this Agreement and that they have read this Agreement and have had the opportunity to receive an explanation from legal counsel regarding the legal nature and effect of this Agreement, and each Party understands the terms and provisions of this Agreement and its nature and effect. Each Party further represents that they are entering into this Agreement freely and voluntarily, relying solely upon the advice of their own counsel if applicable, and not relying on representation of any other Party or of counsel for any other Party.

g.  Attorneys' Fees and Costs. The Parties understand and agree that each Party will bear its own respective attorneys' fees and costs.  If any litigation is commenced to enforce this Agreement, the prevailing party or parties shall be entitled to recover its legal fees and expenses from the non-prevailing party or parties.

h.  Cooperation.  The Parties hereto shall cooperate and use their best efforts to obtain the Order approving this Agreement and will take such steps and execute such documents as may be necessary to implement the terms of this Agreement and any Order approving this Agreement.

i.  Counterparts and Facsimiles. This Agreement may be executed in multiple counterparts, each of which will be deemed an original Agreement, and all of which

will constitute one agreement. Any signature in counterpart provided via facsimile and/or electronic mail with an Adobe PDF attachment of this Agreement will be deemed an original signature.

j.  <u>Further Assurances</u>. The Parties will execute and deliver all documents and perform all further acts that may be reasonably necessary to effectuate the purpose and provisions of this Agreement.

k.  <u>Meaning of Pronouns and Effect of Headings</u>. As used in this Agreement and attached exhibits, the masculine, feminine and/or neuter gender, in the singular or plural, will be deemed to include the others whenever the text so requires. The captions and paragraph headings in this Agreement are inserted solely for convenience or reference and will not restrict, limit, or otherwise affect the meaning of the Parties' agreement.

l.  <u>Recitals</u>. The foregoing recitals are true and correct and incorporated as if fully set forth herein.

m.  <u>Construction</u>. This Agreement will be construed as if the Parties jointly participated in the preparation of this Agreement and any uncertainty and/or ambiguity will not be interpreted against any one Party.

n.  <u>Timing</u>.  Time shall be of the essence for each and every provision of this Agreement.

o.  <u>Allocation of Settlement Proceeds by the Bankruptcy Estate</u>.  The Parties agree amongst themselves and for the purposes of preparing the Settlement Motion, that the payment of settlement proceeds to the Bankruptcy Estate shall be allocated as follows: $165,000.00 to the resolution of all issues regarding the Precious Metals, and $110,000.00 as to the resolution of any and all fraudulent transfer or other avoidance actions, and related litigation.

Date: _____

By: _____
Sonya L. Salkin, Trustee

_____
Dr. Gary Hoste individually
and for Gary Hoste, DC

_____
Dr. Jeffrey Miller

_____
Cindi Chan

_____
Chan Courier Services, Inc.,
By its President, Cindi Chan

_____
Yin Yang Management, Inc.
By its President, Cindi Chan

_____
Your Doctor Center LLC
By its Managing Member, Cindi
Chan

Also agreed to by:

_____
Zach Shelomith, Esq.
for Leiderman Shelomith, P.A. (through 5/31/2016);
and Leiderman Shelomith Alexander + Somodevilla,
PLLC (6/1/2016 and after)

_____
Mark Rickard, Esq.

_____
Howard Levine, Esq.

_____
The Salkin Law Firm, P.A.,
Sonya L. Salkin, Esq.

16

Date: _____

By: _____
    Sonya L. Salkin, Trustee


_____          _____
Dr. Gary Hoste individually               Dr. Jeffrey Miller
and for Gary Hoste, DC


_____          _____
Cindi Chan                                Chan Courier Services, Inc.,
                                          By its President, Cindi Chan


_____          _____
Yin Yang Management, Inc.                 Your Doctor Center LLC
By its President, Cindi Chan              By its Managing Member, Cindi
                                          Chan


Also agreed to by:


_____          _____
Zach Shelomith, Esq.                      Mark Rickard, Esq.
for Leiderman Shelomith, P.A. (through 5/31/2016);
and Leiderman Shelomith Alexander + Somodevilla,
PLLC (6/1/2016 and after)


_____          _____
Howard Levine, Esq.                       The Salkin Law Firm, P.A.,
                                          Sonya L. Salkin, Esq.


16

Date: _____

By: _____
    Sonya L. Salkin, Trustee

 

_____
Dr. Gary Hoste individually
and for Gary Hoste, DC

_____
Dr. Jeffrey Miller
Dr. Jeffrey Miller

_____
Cindi Chan

_____
Chan Courier Services, Inc.,
By its President, Cindi Chan

_____
Yin Yang Management, Inc.
By its President, Cindi Chan

_____
Your Doctor Center LLC
By its Managing Member, Cindi
Chan

Also agreed to by:

_____
Zach Shelomith, Esq.
for Leiderman Shelomith, P.A. (through 5/31/2016);
and Leiderman Shelomith Alexander + Somodevilla,
PLLC (6/1/2016 and after)

_____
Mark Rickard, Esq.

_____
Howard Levine, Esq.

_____
The Salkin Law Firm, P.A.,
Sonya L. Salkin, Esq.

Date: _____

By: _____
      Sonya L. Salkin, Trustee


_____                _____
Dr. Gary Hoste individually                Dr. Jeffrey Miller
and for Gary Hoste, DC


_____                _____
Cindi Chan                        Chan Courier Services, Inc.,
                                  By its President, Cindi Chan


_____                _____
Yin Yang Management, Inc.            Your Doctor Center LLC
By its President, Cindi Chan        By its Managing Member, Cindi
                                  Chan


Also agreed to by:


_____                _____
Zach Shelomith, Esq.                Mark Rickard, Esq.
for Leiderman Shelomith, P.A. (through 5/31/2016);
and Leiderman Shelomith Alexander + Somodevilla,
PLLC (6/1/2016 and after)


_____                _____
Howard Levine, Esq.                 The Salkin Law Firm, P.A.,
                                  Sonya L. Salkin, Esq.

Date: _____

By: _____
    Sonya L. Salkin, Trustee


_____        _____
Dr. Gary Hoste individually               Dr. Jeffrey Miller
and for Gary Hoste, DC


_____        _____
Cindi Chan                      Chan Courier Services, Inc.,
                                     By its President, Cindi Chan


_____        _____
**Yin Yang Management, Inc.**      **Your Doctor Center LLC**
*By its President*, Cindi Chan     By its Managing Member, Cindi
                                     Chan


Also agreed to by:


_____        _____
Zach Shelomith, Esq.                Mark Rickard, Esq.
for Leiderman Shelomith, P.A. (through 5/31/2016);
and Leiderman Shelomith Alexander + Somodevilla,
PLLC (6/1/2016 and after)

_____        _____
Howard Levine, Esq.                 The Salkin Law Firm, P.A.,
                                     Sonya L. Salkin, Esq.